UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | |
| TWO GENERAL ELECTRIC AIRCRAFT ENGINES, WITH ENGINE SERIAL NUMBERS 695244 AND 705112, AND ALL RECORDS PERTAINING THERETO | : | Civil Action No. 14-2213 (GK) |
| Defendant. | : | |

## Memorandum Opinion and Order

### I.   Background

This case began on December 30, 2014, when the United States filed a Verified Complaint for Forfeiture in Rem against two General Electric aircraft engines with engine serial numbers 695244 and 705112 (the "Defendant Engines"). See Unopposed Order to Repatriate the Defendant Properties ("Repatriation Order") [Dkt. No. 32] (describing the history of this case). At the time of the Government's Complaint, these engines were located in Antalya, Turkey. Id.

Subsequently, Evans Meridians, Ltd. ("Evans," "Claimant"), filed a verified claim to the Defendant Engines. Id. After filing this claim, and unbeknownst to the Court or the Government, Evans

transported the Defendant Engines from Turkey to Shanghai, China, on or about July 27, 2015.  Id.

In response, and pursuant to the Government's Motion for Order to Repatriate, [Dkt. No. 31], on January 27, 2016, the Court ordered Evans to either repatriate the Defendant Engines to the United States or post a bond of $6,000,000 by March 31, 2016. Repatriation Order.  To date, Evans has done neither.[1]

Accordingly, the Government filed a Motion for Order to Show Cause why Evans should not be held in contempt for violating the Repatriation Order.  Mot. for Order to Show Cause [Dkt. No. 41]. The Court granted the Government's Motion, scheduled a contempt hearing, and ordered that Evans' director or another representative with authority to direct the affairs of the corporation attend.  Order ("Show Cause Order") [Dkt. No. 47].

On October 24, 2016, the contempt hearing was held.  Pursuant to the Court's Show Cause Order, Eugeny Bespalov, an attorney from Russia with a power of attorney to bind Evans, attended and testified.

---

[1] Evans' counsel candidly admits that Evans has not complied with the Court's Repatriation Order.  Response to Mot. for Order to Show Cause ("Response") at p. 3-4 [Dkt. No. 44]; Unofficial Transcript of Show Cause Hearing ("Unofficial Transcript") at p. 17 ¶¶ 9-10.  An unofficial transcript of the Show Cause Hearing was prepared by the Court Reporter and will be filed on ECF.

## II.  Legal Standard

"The Court has both an inherent and a statutory power to enforce compliance with its orders and may exercise that authority through a civil contempt proceeding." SEC v. Bankers Alliance, Corp., 881 F. Supp. 673, 678 (D.D.C. 1995) (citing inter alia Shillitani v. United States, 384 U.S. 364, 370 (1966); United States v. United Mine Workers of America, 330 U.S. 258, 330–32 (1947); 18 U.S.C. § 401). "A party commits contempt when it violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." Id. (internal citations and quotations omitted).

"[T]he moving party has the burden of showing by clear and convincing evidence that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order." Id. The respondent "may assert a present inability to comply with the order in question" as an affirmative defense, but in doing so, has the burden of production. U.S. v. Rylander, 460 U.S. 752, 757 (1983); Tinsely v. Mitchell, 804 F.2d 1254, 1256 (D.C. Cir. 1986) ("impossibility of performance constitutes a defense to a charge of contempt"). To meet this burden, the respondent "must demonstrate his inability to comply categorically and in detail."

<u>Bankers Alliance</u>, 881 F. Supp. At 678; <u>SEC v. Showalter</u>, 227 F. Supp. 2d 110, 120 (D.D.C. 2002) (defendant cannot merely assert inability, but must "*establish* that she has made. . .all reasonable efforts" to comply (emphasis added)).

Even if the respondent cannot demonstrate that she is unable to comply with the court's order, the court is required to consider her "good-faith efforts to comply with [the] order in mitigation of any penalty" the court might impose. <u>Tinsely</u>, 804 F.2d at 1256. "To show good faith, the [respondent's] duty includes the obligation to be reasonably diligent and energetic in attempting to comply with [the] court's order, and to pay what he can toward the judgment." <u>Showalter</u>, 227 F. Supp. 2d at 120. A respondent attempting to demonstrate that she has acted in good faith to comply must provide "adequate detailed proof." <u>Id.</u>

Civil contempt is a remedial device, utilized to achieve compliance with a court's order. <u>Id.</u> Therefore, the sanction imposed is designed to secure compliance, not to punish. <u>Bankers Alliance</u>, 881 F. Supp. at 678; <u>United Mine Workers of America</u>, 330 U.S. at 304 (the sanction imposed may be employed "to coerce the defendant into compliance with the court's order").

4

### III. Analysis

#### A. Evans Is in Contempt of the Repatriation Order

Here, there is no question that Evans has failed to comply with the Court's Repatriation Order, as Evans readily conceded that it has not.  Response at p. 3-4; Unofficial Transcript of Show Cause Hearing ("Unofficial Transcript") at p. 17 ¶¶ 9-10. Instead, Evans raises two arguments as to why the Court should not hold it in contempt.

First, Evans argues that it is impossible to comply with either prong of the Court's Order.  Response at 5-6.  Evans forthrightly admitted that it has produced no evidence, whatsoever, demonstrating that it is unable to either repatriate the engines or post a $6,000,000 bond.  Id.; Unofficial Transcript at p. 18 ¶¶ 3-10.  Consequently, as Evans has not produced even one shred of evidence in support of its argument that it is unable to comply with the Court's Repatriation Order, it is obvious that Evans cannot meet its burden to demonstrate impossibility.[2]

Second, Evans argues that it is making good faith efforts to comply with the Repatriation Order.  Response at 7.  In support of

---

[2] The only evidence presented at the Show Cause Hearing was the testimony of Mr. Bespalov.  When asked what assets Evans has, information that would be necessary for the Court to determine whether Evans has the ability to comply with the Repatriation Order, Mr. Bespalov stated that he did not have any information regarding Evans' assets.  Unofficial Transcript at p. 44 ¶ 4.

this argument, Evans asserts that it has an ownership interest in an entirely different set of engines that are located in Miami (the "Miami Engines") and that it is currently attempting use its stake in those engines to meet the terms of the Repatriation Order. Id. The Government responds that the Miami Engines have nothing to do with this case and argues that Evans' conduct regarding those engines does not constitute a good faith effort to comply with the Repatriation Order. Reply to Mot. for Order to Show Cause ("Reply") at 3-4.

The Court agrees with the Government. Taken at face value, Evans' offer is not a concrete step towards compliance with the Court's Repatriation Order, but a mere proposal with an uncertain chance of success. Evans asserts that it can sell the Miami Engines, and use the funds to pay some indeterminate portion of the $6,000,000 bond, or alternatively, post the Miami Engines themselves as substitute collateral for the $6,000,000 bond. Yet, by Evans' owns admission, it lacks physical possession of the Miami Engines, and the third party that does have possession of them has some sort of monetary claim against Evans which clouds Evans' title to them.

Thus, Evans presently lacks the ability to either sell the Miami Engines or post them as substitute collateral, and it is wholly uncertain whether Evans will ever have the ability to do

so.  All Evans has is a questionable plan for future action.  That plan does not constitute an effort at compliance, but is at best, a proposal to make future efforts that, if successful, might produce assets that would then enable Evans to make a good faith effort at compliance.

Indeed, when Evans' conduct is viewed in its entirety, it is abundantly clear that it has not met its burden to demonstrate that it made "all reasonable efforts to comply" with the Court's Repatriation Order.  <u>Showalter</u> at 120.  A showing of good-faith efforts by a contemnor requires her to bring forward evidence of her ability to comply, so that the court may evaluate the efforts she has actually made against those she had the capability to make. Here, Evans' refusal to put forward such evidence dooms its argument that it is making good faith efforts, just as surely as it doomed its argument of impossibility.

Because Evans has failed to present any evidence of how much it would cost to repatriate the Defendant Engines or what assets Evans holds, the Court cannot conclude that Evans made all reasonable efforts to repatriate the Defendant Engines. Similarly, the absence of any evidence of Evans' financial state makes it impossible for the Court to conclude that Evans has done all it reasonably can to post the $6,000,000 bond.  To show good faith, Evans must demonstrate that it is "paying what [it] can."

<u>Showalter</u> at 120.  Yet, the Court has no way of knowing what Evans "can" pay.

The sole piece of evidence before the Court is the testimony of Mr. Bespalov.  However, he failed to identify any steps that Evans has taken to repatriate the Defendant Engines to the United States beyond a single inquiry to the Chinese company that allegedly possesses them, asking for their return.  Unofficial Transcript at p. 46 ¶¶ 17-20.  Given the absence of meaningful evidence, the Court does not consider Evans' single request to have the Defendant Engines returned a reasonable effort at compliance.

In sum, Evans has failed to present any evidence showing that it was "reasonably diligent and energetic in attempting to comply with this [C]ourt's order."  <u>Id.</u>  Therefore, the Court holds that Evans has not made a good faith effort to comply with the Repatriation Order.  As Evans admits that it has failed to comply with the Repatriation Order and has failed to offer any evidence suggesting that it is unable to comply or has made a good faith effort to do so, the Court finds Evans in civil contempt.

### B. The Government's Proposed Sanction is Appropriate

The Court now turns to the question of what sanction would be sufficient to coerce Evans to comply with the Repatriation Order. <u>United Mine Workers of America</u>, 330 U.S. at 304.  At the Show Cause

Hearing, the Government sought a sanction of $15,000 per day until Evans complies with the Repatriation Order.

In determining what constitutes an effectively coercive sanction, the court "consider[s] the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." Id. In doing so, the court "consider[s] the amount of [the contemnor's] financial resources and the consequent seriousness of the burden to that particular [contemnor]." Id. Where, as here, "the contemnor is the only one who possess the relevant financial information, and chooses not to disclose it," the Court's inability to consider the contemnor's financial resources is not a bar to imposing sanctions. See Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1481-82 (9th Cir. 1992) (internal quotation marks and citations omitted).

In this case, the harm created by Evans' continuing failure to repatriate the Defendant Engines is substantial. The Government's Complaint alleges that the Defendant Engines were destined for Iran, and more specifically, the Islamic Revolutionary Guard Corps-Qods Force, a designated Foreign Terrorist Organization. See Complaint. If correct, each day that the Defendant Engines remain outside the United States increases

the risk that they will arrive at their intended destination, and thereby benefit a hostile organization.

In addition, the Government's proposed sanction of $15,000 per day appears reasonably calculated to coerce compliance with the Repatriation Order. If Evans were to refuse to comply for one year, the sanction would total roughly $5.5 million dollars. This amount is less than the $6,000,000 bond contained in the Repatriation Order and falls between the disputed estimated values of the Defendant Engines. See Response at 2, 4 n.3 (noting that Evans values the engines at roughly $4,000,000, while the Government likely values them at roughly $6,000,000). Therefore, to the extent that Evans has any assets, which remains an open question, the proposed sanction presents Evans with the choice of repatriating Defendant Engines within a year or risk forfeiting assets roughly equivalent to the value of Defendant Engines.

Thus, the Government's proposed sanction is reasonably calculated to coerce Evans' compliance with the Repatriation Order.[3]

---

[3] A sanction of roughly equivalent size was held reasonable under similar circumstances. See Richmark, 959 F.2d 1468 (upholding sanction of $10,000 per day against a foreign defendant who refused to provide information about its assets).

IV.   Conclusion

For the foregoing reasons, the Court holds Claimant Evans Meridian in civil contempt of its Repatriation Order, and imposes a sanction of $15,000 per day until Evans complies with the Repatriation Order.   It is hereby

**ORDERED**, that Evans Meridians, Ltd., shall be held in contempt of Court for violating the Repatriation Order; and it is further

**ORDERED**, that the Court shall sanction Evans Meridians, Ltd., by requiring that it pay a fine of $15,000 per day, from the day this Order issues until it complies with the Repatriation Order, to the Registry of the Court.

*Gladys Kessler*

Gladys Kessler
United States District Judge

November 2, 2016

**Copies via ECF to all counsel of record**

11