# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**TWO GENERAL ELECTRIC AIRCRAFT ENGINES,**<br><br>Defendant. | Case No. 1:14-cv-02213-TNM |

# MEMORANDUM OPINION

This *in rem* proceeding against two General Electric aircraft engines started in 2014, when the United States filed a complaint seeking forfeiture of the engines and alleging that Evans Meridians Ltd. intended to transfer the engines to an Iranian entity with terrorist ties. Evans Meridians filed a counter-claim asserting lawful ownership of the property. In 2016, it failed to comply with a court order directing it to repatriate the engines or post a $6 million bond, and the Court entered a coercive contempt order directing the company to pay the Court a fine of $15,000 for each day that it continued in noncompliance. In 2018, Evans Meridians gave up its claim to the property, saying the engines had been dismantled for parts, and the United States moved for a compensatory contempt order directing the company to pay the United States Marshals Service a $4 million fine. Because Evans Meridians has relinquished its claim and there are no other counter-claimants, I will enter default judgment in favor of the United States. At a hearing on February 14, 2018, I requested further briefing regarding the United States' motion for compensatory sanctions. Because Evans Meridians's contempt led to the destruction of the engines, I will grant the United States' motion for a compensatory contempt order. In the

interest of justice, I will reduce the outstanding fine under the Court's prior contempt order to $2 million.

I. **The United States Is Entitled to Default Judgment in Its Forfeiture Case Against the Engines**

A court must enter default judgment when the "party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. Pro. 55(a). A party who has voluntarily relinquished its claim to property subject to a forfeiture proceeding has relinquished its right to an adversarial hearing or notice of default judgment. *United States v. 8 Gilcrease Lane*, 638 F.3d 297, 300 (D.C. Cir. 2011). Default judgment in an *in rem* forfeiture proceeding is appropriate when no further defenses against forfeiture remain. *See, e.g.*, *United States v. 2 North Adams Street*, 2010 WL 6714756 at *2 (D.D.C. 2010).

On January 24, 2018, Evans Meridians voluntarily withdrew its claim to the engines. Notice of Vol. Dismissal 1. That withdrawal left no further claimants adverse to the United States' forfeiture claim. I construe the United States' April 2018 supplemental memorandum, asserting that "the government is now entitled to default judgment and an order of forfeiture in the government's favor" as a motion for default judgment. Pl.'s Suppl. Mem. 7; *cf. Estate of Botvin ex rel. Ellis v. Islamic Republic of Iran*, 772 F. Supp. 2d 218, 221 n.1 (D.D.C. 2011) (construing motion for default judgment in part as motion for reconsideration because it argued that a prior ruling was erroneous and because reconsideration was necessary to grant the requested relief). Because Evans Meridians "voluntarily relinquished its claim" to the engines, it also relinquished its right to challenge default judgment in the underlying forfeiture case. *See 8 Gilcrease Lane*, 638 F.3d at 300-02. As no further claimants to the engines remain to present

2

defenses against forfeiture, default judgment is proper.  *See 2 North Adams Street*, 2010 WL 6714756 at *2.  An order of forfeiture will be entered in favor of the United States.

Title to the engines vests retroactively in the United States from the "commission of the act giving rise to forfeiture."  18 U.S.C. § 981(f) (2012).  The Complaint here alleges several acts potentially giving rise to forfeiture, none of which are disputed.  For example, the Complaint alleges that the engines are subject to forfeiture because an attempt was made to transfer them to Iran in violation of the International Emergency Economic Powers Act in late 2013 or early 2014.  Compl. ¶¶ 21-23.  The Complaint also alleges that the engines are subject to forfeiture as property involved in money laundering transactions or attempted money laundering transactions, the first of which took place on October 25, 2013.  *Id.* ¶¶ 2, 27.  The acts giving rise to forfeiture took place before the Complaint was filed and before the engines were dismantled.  Because title vests retroactively, the United States has held title to the engines throughout the pendency of this lawsuit.

## II. A $4 Million Sanction Will Be Awarded to the United States to Compensate It for Its Actual Loss

A federal court has inherent and statutory power to impose civil sanctions upon a contemptuous party.  *See* 18 U.S.C. § 401 (2012); *Shillitani v. United States*, 384 U.S. 364, 370 (1966).  Courts may impose civil sanctions either to coerce the contemnor into compliance with the court's order or "to compensate the complainant for losses sustained" from the contempt.  *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947).  Compensatory sanctions are paid to the complainant, "based upon evidence of complainant's actual loss." *Id.* at 304.

An adversarial hearing is required for a civil contempt sanction only if there is a genuine issue of material fact in dispute about the contempt.  *See Food Lion, Inc. v. United Food &*

3

*Commercial Workers Int'l Union*, 103 F.3d 1007, 1019-20 (D.C. Cir. 1997). "In a contempt proceeding, the moving party has the burden of showing by clear and convincing evidence that (1) a court order was in effect, (2) the order required certain conduct by the respondent, and (3) the respondent failed to comply with the court's order." *SEC v. Bankers All. Corp.*, 881 F. Supp. 673, 678 (D.D.C. 1995).

The material facts relevant to Evans Meridians's contempt were established in the October 2016 adversarial hearing. Mem. Op. 2. The Court determined then that (1) a repatriation order was in effect, (2) the order required Evans Meridians to repatriate the engines or post $6 million bond, and (3) Evans Meridians had failed to do so. *Id.* at 5. No genuine issue of material fact remains unresolved after that hearing on Evans Meridians's continued failure to repatriate the engines. Evans Meridians readily admits that it "was ordered to repatriate the two engines . . . but it did not do so." Evans's Suppl. Mem. 7-8. According to a letter forwarded to the government by Evans Meridians the engines were destroyed while they remained overseas in China. Mot. for Comp. Fine, Ex. A; *see also* Resp. to Mot. For Comp. Fine 4. Evans Meridians's contempt in failing to repatriate the engines caused the destruction of the engines. And the destruction of the engines deprived the United States of its property interest in the engines and in the litigation of its claim.

Evans Meridians insists that it did not "willfully" violate the repatriation order. Evans's Suppl. Mem. 6. Willfulness, however, is not an element of civil contempt. *See Bankers All.*, 881 F. Supp. 678. Evans Meridians also claims that "[t]here has not been any showing that Evans Meridians had the ability to repatriate the engines after the Contempt Order was entered." Evans's Suppl. Mem. 6. But in pleading an impossibility defense to civil contempt, "the defendant has the burden of production." *United States v. Rylander*, 460 U.S. 752, 757 (1983).

The relevant fact is that there has been no showing that Evans Meridians could not repatriate the engines. Mem. Op. 5. The burden of that showing rests on Evans Meridians, and Evans Meridians has not met its burden.

The relief granted to the United States today remediates the property loss suffered as a result of the destruction of the engines. Because a forfeiture award vests title retroactively, the United States has held title to the engines throughout the lawsuit. *See* 18 U.S.C. § 981(f). During the time in which the engines remained overseas as a direct result of Evans Meridians's contempt of the repatriation order, a Chinese warehouse destroyed the engines; this destruction deprived the United States of its property. *See* Evans's Suppl. Mem. 2; *see also* Order to Repatriate. It is an appropriate civil sanction to order Evans Meridians to "compensate the [United States] for losses caused by the violation of the [repatriation] order." *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 75 (D.D.C. 2003).

The United States is entitled to $4 million as compensation for the actual loss of the engines. This is a reasonable valuation of the engines as it reflects the price of Evans Meridians's most recent contract to sell the engines. *See* Pl.'s Suppl. Mem. 9. Evans Meridians claims that the engines "no longer exist," so an approximation of their current market value would be futile. Evans's Resp. to Mot. for Compensatory Fine 4. The proper measure of the United States' loss is the value of the engines at the time Evans Meridians's contempt interfered with the United States' property rights in the engines. The $4 million figure provided by Evans Meridians's own sales negotiations is a fair estimate of that value. *See United Mine Workers of Am.*, 330 U.S. 304 (noting that compensatory contempt fines should be based on evidence of the complainant's actual loss); *see also* Mem. Op. at 10 (noting that Evans Meridians itself valued the engines at roughly $4 million at the time it was held in contempt). Payment to the United

5

States Marshals Service is an appropriate means of directly compensating the United States as the party harmed by Evans Meridians's contempt.

Evans argues that the fine requested by the United States is criminal rather than civil. Evans's Supp. Mem. 3-6. A party facing criminal sanctions is entitled to the Constitutional protections proper to criminal proceedings, including a jury trial, if the sanctions are serious. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994). The distinction between civil and criminal contempt turns on the "character and purpose" of the sanction. *Id.* at 828. The character of the relief is based on "an examination of the relief itself" rather than the subjective motivations of the court. *Id.* If the sanction is punitive and vindicates the authority of the court, it is criminal, but if it is remedial and for the benefit of the complainant, it is civil. *Id.* at 827-28.

When a sanction is a fine, "it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988). The sanction imposed by the Court today is payable to the United States as the complainant, and it is thus civil and compensatory, rather than criminal.

Evans Meridians argues that a $4 million sanction is large enough to push this sanction from the realm of civil contempt to that of criminal contempt. Evans's Suppl. Mem. 5. To support this view, Evans Meridians cites to footnote 5 of *Bagwell*. *Id.* But that footnote uses the size of a sanction to distinguish between petty and serious *criminal* sanctions, not to distinguish between civil and criminal sanctions. *Bagwell*, 512 U.S. 821, 837, n.5. Evans Meridians

misinterprets *Bagwell* and thus is incorrect in asserting that the size of the sanction factors into the civil-criminal distinction.

Evans Meridians is similarly incorrect in arguing that, because forfeiture is punitive and criminal, a sanction relating to forfeiture must be punitive and criminal. Evans's Suppl. Mem. 7-8. Forfeiture is not always punitive and criminal; forfeiture can be civil. *See* 18 U.S.C. §§ 981-82. In fact the authorities cited by Evans Meridians highlight the distinction between civil and criminal forfeiture. *Austin v. United States*, 509 U.S. 602, 618 (1993) (finding that, although civil sanctions are distinct from criminal sanctions, the Eighth Amendment applies); *see also Austin*, 509 U.S. at 624 (Scalia, J. concurring) (distinguishing criminal *in personam* from civil *in rem* forfeiture); *United States v. Bajakajian*, 524 U.S. 321, 331-32 (1998) (distinguishing punitive *in personam* forfeiture from remedial *in rem* forfeiture). Evans Meridians did not join the action as a claimant until three months after the United States filed its claim against the engines. Claim for Property 1. The act giving rise to forfeiture may have occurred as early as October 2013, a month before Evans Meridians was invoiced for the engines, to be delivered in the British Virgin Islands. Complaint 8-9. The underlying action here is for *civil* forfeiture, proceeding *in rem* against the engines; it is not for *criminal* forfeiture, proceeding *in personam* against Evans Meridians. Complaint 1; *see* 18 U.S.C. §§ 981-82.

### III. In the Interests of Justice, the Outstanding Coercive Contempt Sanction Will Be Reduced to $2 Million

A district court has "wide discretion" and "broad equitable powers to craft remedial sanctions for civil contempt." *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 36 (D.D.C. 2014). In addition to its discretion in fashioning equitable sanctions, "a district court ordinarily has the power to modify or rescind its orders at any point prior to final judgment in a civil case." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016). The original repatriation order

required that Evans Meridians either repatriate the engines or post a $6 million bond pending final resolution of the forfeiture case. Order to Repatriate 2. When Evans Meridians failed to do either, the Court held Evans Meridians in contempt and imposed a $15,000 per day coercive sanction. Mem. Op. 11. Under that order, Evans Meridians owes $7,035,000 to the United States District Court for the District of Columbia. In the interest of justice, however, I will reduce the fine to $2 million. *Cf. Powell v. Castaneda*, 247 F.R.D. 179, 181 (D.D.C. 2007) (granting partial reconsideration of interlocutory order "as justice requires").

* * *

In total, Evans Meridians owes $6 million in civil sanctions—$4 million in compensatory sanctions payable to the United States Marshals Service and $2 million in outstanding coercive civil sanctions payable to the Court. This total reflects the amount of the original bond ordered by the Court and is appropriate because Evans Meridians would not have been in contempt had it simply complied with the order by posting bond. *See* Order to Repatriate 2.

### IV. Conclusion

For these reasons, default judgment and an order of forfeiture will be entered in favor of the Plaintiff, Plaintiff's motion for compensatory civil contempt sanctions in the amount of $4 million payable to the United States Marshals Service will be granted, and the amount of the outstanding coercive civil sanction owed to the Court will be reduced to $2 million. A separate order will issue.

Dated: June 11, 2018

TREVOR N. MCFADDEN
United States District Judge